Filed 2/24/15

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| In re the Marriage of M.A and M.A. et al. | D065078 |
| M.A., | |
| Appellant, | (Super. Ct. No. DN129090) |
| v. | |
| M.A. et al., | |
| Respondent. | |

APPEAL from post-judgment orders of the Superior Court of San Diego County,

Pennie K. McLaughlin, Commissioner.  Affirmed in part, reversed in part, and remanded.


M.A., in pro per., for Appellant.

M.A., in pro per., for Respondent.

Kamala D. Harris, Attorney General, Julie Weng-Gutierrez, Assistant Attorney

General, Linda M. Gonzalez and Ricardo Enriquez, Deputy Attorneys General, for The

Public Interest.

INTRODUCTION

This case presents a harsh reminder of the severe consequences that may result from a judicial officer's failure to properly handle a statement of disqualification filed under Code of Civil Procedure section 170.3, subdivision (c)(1). Father appeals from post-judgment orders: an order dated October 25, 2013, awarding mother $6,500 in attorney fees under Family Code section 2030; and November 22, 2013 orders, determining the amount of child support he must pay and other matters.

As to the October 25 order, father contends the court abused its discretion in awarding the fees because of mother's superior financial condition and higher percentage of parenting time. We conclude father has not met his burden of establishing a clear abuse of discretion and affirm this order.

Father contends the November 22 orders were invalid because, among other reasons, the commissioner who made it was disqualified under Code of Civil Procedure section 170.3, subdivision (c)(4). We agree and, therefore, we reverse these orders and remand the matter to the superior court for further proceedings.

BACKGROUND

Father and mother divorced in 2004. They have two children. On the topic of child support, the judgment of dissolution incorporated the parties' marital settlement agreement, which provided: "A. So long as both parties are gainfully employed, the goal is for [father and mother] to share equally the children's day care expense, health insurance, clothing and food, and other necessaries until the children turn age 18. Currently, day care expenses are $1444.00 per month; and the children's health care

2

premiums are $190.00 per month. The current total of the children's day care and health care premiums are $1634.00 monthly. One-half of that amount is $817.00, which is being used as a basis for the calculations below. The parties agree to modify, pro-rata, the terms of children's support based on changes in actual cost of day care and or health care premiums.

"B. It is understood that, at this time, [mother] is making a steady income from professional employment; and that [father] is currently unemployed and has no income. [Father] expects to return to work next month, in a self-employed capacity, and that it [is] anticipated that it will take a reasonable period of time before he has a steady source of income from which to pay for his full share of child care and support related expenses. It is anticipated that he may have to incur debt to pay for business and personal expenses. For these reasons, the parties wish to provide for an increase in the amount of [father's] child expense contributions over a period of time.

"C. Commencing August 15, 2003, [father] shall pay [mother] $385.00 per month, and the 15th of each month thereafter. Payment shall be made directly, not by wage assignment.

"D. [Mother] acknowledges prepayment of August, September and October payments. Therefore, [father's] next payment of $385.00 is due on November 15, 2003.

"E. Commencing February 15, 2004, the amount shall increase to $550.00.

"F. Commencing June 15, 2004, the amount shall increase to $700.00.

"G. Commencing October 15, 2004, the amount shall increase to the $817.00, or the one-half of the actual cost of day care and the children's health care premiums.

3

"H. Both [father and mother] will each pay for the children['s] clothing, food, entertainment and other necessaries, while in their physical custody without contribution from the other parent."

In March 2011 the County of San Diego Department of Child Support Services (Department) began enforcing the dissolution judgment and eventually levied approximately $7,600 from father's bank account. In October 2011 the Department filed two motions. One motion requested a modification of father's child support obligation and a seek work order against father. The other motion requested a determination of child support arrears. It included a declaration from mother detailing father's child support history from January 2008 to September 2011. The declaration indicated father had been ordered to pay $817 a month, but had never paid this amount. Rather, one month he paid or was credited for paying $2,000, and the remaining months he paid differing amounts ranging from a low of nothing to a high of $390, with $68 being the most common amount.

Both motions were submitted on Judicial Council forms, which contained a notice informing the parties, "This case may be referred to a court commissioner for hearing. By law court commissioners do not have the authority to issue final orders and judgments in contested cases unless they are acting as temporary judges. The court commissioner in your case will act as a temporary judge unless, *before the hearing*, you or any other party objects to the commissioner acting as a temporary judge. The court commissioner may still hear your case to make findings and a recommended order. If you do not like the recommended order, you must object to it within 10 court days; otherwise, the

4

recommended order will become a final order of the court. If you object to the recommended order, a judge will make a temporary order and set a new hearing." (See Fam. Code, § 4251, subd. (b).)

In March 2012 father filed an order to show cause (OSC) why his child support obligation should not be modified to zero. In support of his OSC, he submitted a declaration disputing the dissolution judgment obliged him to pay child support of $817 a month and asserting the judgment only obliged him to pay half the actual cost of day care and health insurance premiums.

In January 2013 mother filed a request for an order establishing the amount of child support arrears, awarding her attorney fees and costs, and sanctioning father under Family Code section 271. In support of her requests, mother produced evidence showing father had miscellaneous income of $473,923 in 2011 and a checking account balance of $175,240.71 as of November 30, 2012.

The court heard the parties' respective motions to modify child support and determine arrears at a hearing on July 5, 2013. Mother argued the dissolution judgment required father to pay child support of $817 a month because it was an amount certain and there was no evidence allowing the court to determine with certainty the actual amount of the children's past day care and health care expenses. Father argued the plain language of the judgment, supported by the parties' course of dealing, only required him to pay half of whatever the actual costs of the children's day care and health care were for any given month.

5

The court essentially agreed with father, finding "the amount was set at [$]817 back in 2003 and that the parties contemplated that it would change over time with the change in the needs of the child care or the rising costs potentially or decreasing for the health care insurance premiums." Accordingly, the court found the enforceable support amount for purposes of determining arrears was "[$]817 or one half the actual costs."

Following the court's ruling, the parties stipulated father did not have any child support arrears through October 31, 2011, and father waived any right to claim a credit against his child support obligations for a cash loan made to and personal property transferred to mother. The parties further stipulated father had a credit against his prospective child support obligations of $27,599.68 based on $20,000 he had prepaid to mother and $7,599.68 the Department had previously collected from him.

The court continued the hearing to determine the amount of ongoing child support for the period starting November 1, 2011. In the interim, the court ordered father to pay temporary child support of $2,229 per month from November 1, 2011, through July 31, 2012, based on father's then 5 percent parenting schedule; and $1,317 per month from August 1, 2012, forward based on father's current 35 percent parenting schedule. The court calculated the temporary support based on mother's current income and father's receipt of approximately $474,000 from his law practice in 2011. The court amortized father's income over a three-year period because father earned almost all of the $474,000 from working on a single contingency fee case for several years.

Near the end of the hearing, father's counsel indicated he would be filing a motion to be relieved. The court set a briefing schedule for the motion and set it to be heard on

6

August 1, 2013. Less than a week later, father's counsel filed the motion. Counsel supported the motion with a declaration stating he and father had irreconcilable differences, which had caused a complete breakdown of their attorney-client relationship.

Three days after counsel filed his motion to be relieved, father filed a statement of disqualification under Code of Civil Procedure sections 170.1 and 170.3 against the commissioner handling the case. In the statement, father alleged the commissioner showed bias by, among other acts: (1) failing to take any "corrective action" against mother's counsel after interpreting the dissolution judgment's child support provisions in father's favor; and (2) awarding mother temporary child support.

The commissioner discovered the statement while reviewing the file in preparation for the August 1, 2013, hearing. Before the hearing commenced, the court issued an order striking the statement, finding father had failed to serve it on the commissioner in the manner required by Code of Civil Procedure section 170.3, subdivision (c)(1). The court further found the face of the statement failed to state legal grounds for disqualification as the allegations of bias in the statement were based solely on the commissioner's prior rulings.

At the August 1, 2013, hearing, the court advised the father and his counsel of the order striking the statement. Father requested an opportunity to argue the matter; however, the court denied his request, noting father had "spoken through [his] 11 pages of writing. I have reviewed it. It fails to state any legal basis for disqualification."

The court then heard father's counsel's motion to be relieved. Counsel confirmed there had been, and still was, a "complete breakdown of the attorney/client relationship,"

7

and nothing "could be done to allow [counsel] to continue to represent [father]," who counsel asserted "failed to follow [counsel's] instructions, has not effectively cooperated and frustrated [counsel's] ability to represent him." Based on counsel's representations, the court granted the motion and relieved counsel. Father requested permission to substantively respond to the motion; however, counsel objected to the request because father had not filed any responsive papers. After the court noted it did not have any responsive papers from father and father acknowledged he had not filed any, the court denied his request for argument.

In September 2013 father filed a motion seeking sanctions against mother and her attorney under Code of Civil Procedure sections 128.5, 128.7, and Family Code section 271. Mother opposed father's request for sanctions and in turn sought sanctions against him.

At a hearing on October 25, 2013, the court heard mother's request for attorney fees and awarded her $6,500 under Family Code section 2030, subd. (a).[1] The court continued the hearing as to father's motion for sanctions and the determination of father's child support obligation from November 1, 2011, forward.[2]

---

[1] Mother initially sought attorney fees under Family Code section 3557. She later orally modified her request to seek attorney fees under Family Code section 2030.

[2] Although the October 25, 2013, hearing was reported, our knowledge of what transpired at the hearing is limited because father did not include a transcript of it in the appellate record.

In November 22, 2013, the day of the continued hearing, father filed a combined objection under Family Code section 4251 to the commissioner acting as a temporary judge and a second statement seeking the commissioner's disqualification under Code of Civil Procedure sections 170.1 and 170.3.  Regarding the objection under Family Code section 4251, father indicated he had not previously objected to the commissioner acting as a temporary judge because the commissioner never provided him with the required notice advising him of his right to have the proceedings reviewed by a superior court judge and how to exercise the right.  (See Fam. Code, § 4251, subd. (b).)  He further asserted the commissioner's failure to provide him with the required noticed rendered all of her prior orders void.  Consequently, he requested the court vacate the July 5, 2013, order requiring him to pay temporary child support and the October 25, 2013, order requiring him to pay mother's attorney fees.  He did not, however, request the court vacate the July 5, 2013, order finding his child support obligation under the dissolution judgment was limited to half of the actual day care and health insurance premium expenses.

Regarding the second statement of disqualification, he alleged the commissioner committed new acts of bias since he filed the first statement of disqualification.  These acts included:  (1) failing to give him the notice required by Family Code section 4251, subdivision (b); (2) refusing to allow him to make arguments at the August 1, 2013, hearing on his attorney's motion to be relieved; and (3) failing to read his pleadings or allow him to make arguments before awarding mother attorney fees at the October 25, 2013, hearing.

9

As to the second statement of disqualification, the court indicated it would not "entertain any other motion on disqualification" at that time. The court nonetheless assured father it was not biased against him and responded to some of the allegations in the statement.

As to the father's objection under Family Code section 4251, the court initially sustained the objection, but later reversed itself and found the objection was untimely. While the court implicitly acknowledged it had not advised father of his right to object to the commissioner acting as a temporary judge, the court found father was aware of this right because he was represented by a family law specialist prior to the commencement of the July 5, 2013, hearing, and he had been personally served with the Department's motion for modification of support, which contained the advisement.[3]

The court then turned to the merits of the matters before it and modified its July 5, 2013, temporary child support order to account for an increase in mother's income and $97,000 of claimed expenses associated with father's 2011 contingency fee earnings. The modified ordered required father to pay monthly child support of $1,843 from November 1, 2011 through July 31, 2012; $946 for August 1, 2012 through October 31, 2013; $894 from November 1, 2013 through October 31, 2014; and nothing after November 1, 2014. The modified order continued to credit father for amounts previously paid by or collected from him. The court additionally denied father's request for

---

[3] Although father was not under oath at the time, father informed the court his former attorney never told him of his right to object.

10

sanctions, father's request for reconsideration of the October 25, 2013, attorney fees award, and mother's request for another award of attorney fees.

DISCUSSION

I

*October 25, 2013, Attorney Fees Order*

Father contends the court abused its discretion in awarding mother attorney fees of $6,500 at the October 25, 2013 hearing, because she was in better financial condition than he and she had a higher percentage of parenting time.[4] We disagree.

In any proceeding subsequent to the entry of a dissolution judgment, "the court shall ensure that each party has access to legal representation, including access early in the proceedings, to preserve each party's rights by ordering, if necessary based on the income and needs assessments, one party, except a governmental entity, to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding." (Fam. Code, § 2030, subd. (a)(1); *In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 768 [the purpose of a pendente lite attorney fees award is to provide a party, where necessary, with adequate funds to properly litigate the controverted issues].)

---

4     Although the Department has taken a position on the other issues raised on appeal, it has not taken a position on this issue because the issue does not involve the statewide child support program.

11

In determining whether to award attorney fees, the court must consider the parties' respective needs and incomes. (*In re Marriage of Sullivan*, *supra*, 37 Cal.3d at p. 768.) The court is not limited to considering the parties' salaries. The court may also consider all evidence of the parties' income, assets and abilities. (*Ibid.*) The decision to award attorney fees is left to the court's sound discretion. (*Id*. at pp. 768-769.) We will not disturb the award on appeal absent a clear showing of abuse, e.g., a clear showing no judge could have reasonably made the award. (*Id.* at p. 769.)

Here, the record, viewed in the light most favorable to the court's decision, shows the court considered the parties' respective income and expenses and decided to award mother approximately one-third of the attorney fees she had actually incurred based on the significant disparity in the parties' cash assets and its effect on the parties' respective abilities to fund the litigation. Such a decision based on such considerations was well within the court's discretion. (See e.g., *In re Marriage of Duncan* (2001) 90 Cal.App.4th 617, 631.) Accordingly, father has not shown the requisite clear abuse necessary for us to reverse the court's order.

II

*November 22, 2013, Orders*

Father contends the court's orders of November 22, 2013, are void because the court became disqualified after failing to act on father's second statement of disqualification.[5]  We agree.

A party may seek a commissioner's disqualification for cause by filing and serving a written verified statement objecting to the hearing before the commissioner and setting forth the facts constituting the grounds for the commissioner's disqualification.  (Code Civ. Proc., §§ 170.3, subd. (c)(1); 170.5, subd. (a).)  The statement must be presented at the earliest practicable opportunity after the party discovers the facts constituting the grounds for disqualification.  (§ 170.3, subd. (c)(1).)

Once a statement of disqualification is filed, the commissioner has limited power to act in the proceeding until the question of his or her disqualification is determined.  (Code Civ. Proc., § 170.4, subd. (a), (d).)  The commissioner may, without conceding disqualification, "request any other judge agreed upon by the parties to sit and act in his or her place."  (Code Civ. Proc., §§ 170.3, subd. (c)(2), 170.4, subd. (a)(2).)  The

---

5    Generally, a party may only obtain review of the determination of the disqualification of a commissioner by filing a petition for writ of mandate.  (Code. Civ. Proc., § 170.3, subd. (d); *People v. Brown* (1993) 6 Cal.4th 322, 336.)  There is an exception to this rule for claims asserting the deprivation of constitutional due process. (See, e.g., *People v. Brown*, *supra*, at pp. 332-335; *Brown v. American Bicycle Group, LLC* (2014) 224 Cal.App.4th 665, 673; *Tri Counties Bank v. Superior Court* (2008) 167 Cal.App.4th 1332, 1339.)  We need not decide whether this exception applies here because father is not challenging the propriety of the court's failure to act on his statement of disqualification.  Rather, he is challenging the import of the court's failure to act on the validity of the court's subsequent orders.

commissioner may also, within 10 days of the filing or service of the statement, whichever is later:  (1) order the statement stricken if the statement is untimely or, on its face, discloses no legal grounds for disqualification; (2) consent to disqualification; or (3) file a written verified answer to the statement.  (Code Civ. Proc., §§ 170.3, subd. (c)(3); 170.4, subd. (b).)  However, the commissioner may not ignore the statement.  (*Urias v. Harris Farms, Inc.* (1991) 234 Cal.App.3d 415, 421.)

The commissioner in this case did not take any of the permissible actions in response to father's second statement of disqualification.  Instead, the commissioner impermissibly ignored the statement by declining to entertain it.  As a result, the commissioner is deemed to have consented to disqualification.  (Code Civ. Proc., § 170.3, subd. (c)(4); *Urias v. Harris Farms, Inc.*, *supra*, 234 Cal.App.3d at pp. 418-419, 421-422; *Hollingsworth v. Superior Court* (1987) 191 Cal.App.3d 22, 26; *Lewis v. Superior Court* (1988) 198 Cal.App.3d 1101, 1103-1104.)

Moreover, because the question of the commissioner's disqualification was not determined at or before the November 22, 2013, hearing, she lacked power to decide the merits of the matters before her at the hearing.  (Code Civ. Proc., § 170.4, subd. (d); *Lewis v. Superior Court*, *supra*, 198 Cal.App.3d at pp. 1103-1104.)  Thus, the orders she made at the hearing regarding father's objection under Family Code section 4251 to her acting as a temporary judge, the Department's and father's motions for modification of child support, father's request for sanctions, father's request for reconsideration of the award to mother of $6,500 in attorney fees, and mother's request for an award of additional attorney fees are all invalid.  (*People v. Cowan* (2010) 50 Cal.4th 401, 454

14

[except as permitted by Code of Civ. Proc. § 170.4, actions taken by a disqualified judge are invalid]; accord, *Rossco Holdings, Inc. v. Bank of America* (2007) 149 Cal.App.4th 1353, 1362; *Christie v. City of El Centro* (2006) 135 Cal.App.4th 767, 776.) Given this consequence, we need not address father's remaining challenges to these orders.

DISPOSITION

The post-judgment order of October 25, 2013, awarding mother attorney fees of $6,500 is affirmed. The post-judgment orders of November 22, 2013, are reversed and the matter is remanded to the superior court for further proceedings consistent with this decision. The parties are to bear their own appeal costs.


McCONNELL, P. J.

WE CONCUR:


O'ROURKE, J.


AARON, J.

15