Filed 8/30/24  Simon v. Rosenthal CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LORAN SIMON, <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> DEBORAH ROSENTHAL, <br><br>     Defendant and Respondent. | A168225 <br><br> (San Francisco City & County <br>   Super. Ct. No. CCH-23-585472) |

Loran Simon appeals from a judgment denying his request for a civil harassment restraining order (CHRO).  He contends the trial was marred by numerous due process violations, including both procedural issues and alleged bias by the presiding judge.  Simon also asserts the trial court erred in awarding post-judgment costs and denying his motion for new trial.  We disagree and affirm the judgment.[1]

---

[1] On April 8, 2024, Simon filed a motion to augment the record or, in the alternative, request judicial notice of twenty-one exhibits involving various court materials related to the trial court proceedings in this matter, his petition for writ of mandate in this matter, his petition for writ of mandate in *Simon v. Superior Court of the City and County of San Francisco* (Case No. A168033), trial court proceedings in *Simon v. Goldsen* (CCH-22-584652), and trial court proceedings in *Goldsen v. Cohn* (CCH-05-564000).  Rosenthal opposes the motion as untimely and asserts the identified documents are not properly part of the appellate record.  Because these are

## FACTUAL AND PROCEDURAL BACKGROUND

Simon and respondent Deborah Rosenthal own separate units within a three-unit building in San Francisco. Rosenthal has owned her unit since 2002, and Simon owned his unit since 2021. Both serve on the Homeowners Association (HOA) board.

On March 13, 2023, Simon sought a temporary restraining order (TRO) against Rosenthal, alleging Rosenthal destroyed signage he created for the building and was "lurking, stalking, and pacing" by his parking space, storage areas, and front door. Simon also requested a CHRO. He claimed Rosenthal's harassment was racially motivated. Simon previously sought two other CHROs: one against Todd Brabec, another unit owner in the building, and another against Whitney Goldsen, a tenant residing in Brabec's unit. Those requests remained pending at the time he filed his TRO and CHRO requests against Rosenthal.

In response to the CHRO request, Rosenthal objected based on the following events. At a March 10, 2023 HOA board meeting that Simon refused to attend, the board voted on Simon's unauthorized installation of recording devices and posting of personal signage in the building common areas. The HOA board voted "to take reasonable and necessary steps" to end Simon's "misuse of the common areas." Rosenthal, as president of the HOA, proceeded to take photographs of the signage and cameras and remove the unauthorized signage. She denied engaging in any racist conduct.

A hearing date for the CHRO was scheduled for April 4, 2023 in Department 505. However, Judge Tong in Department 505 recused herself,

---

court records, we grant Simon's request and take judicial notice of these materials. (Evid. Code, §§ 452, subd. (d), 459.)

and the matter was "continued" to the same date and time but in Department 502 before Judge Ross.[2] All parties appeared as ordered.

On April 4, 2023, Simon filed a declaration in support of his request for a CHRO and in reply to Rosenthal's response. He alleged there was no legitimate purpose for any of Rosenthal's actions. He asserted neither the HOA nor the Covenants, Conditions, & Restrictions (CC&Rs) authorized one owner to "willfully destroy another owner's property," and he was denied his due process rights. He stated Rosenthal was engaged in "a cover-up" and "the type of corruption that is deeply rooted in white-supremacy and anti-Black racism." He stated that a second-floor corridor and hallway were "private for the use and enjoyment of my own unit" and were not common areas.

The court first tried the two other cases filed by Simon (against Brabec and Goldsen), with the Goldsen matter concluding in the morning of April 5, 2023. Trial for the current matter began at 11:10 a.m. on April 5, 2023. At 11:40 a.m., Simon made an oral motion to continue the hearing due to an unspecified medical issue. When asked for evidentiary support, Simon referred to a note from a physician on his laptop; the note stated Simon was " 'off work' " for April 5, 2023 due to an " 'encounter that morning.' " No other information was provided and the court, over Rosenthal's objections, continued the matter to April 6, 2023.

---

[2] While the register of actions in *Simon v. Rosenthal* does not reflect Judge Tong's recusal, we note the register of actions in *Simon v. Goldsen* contains a March 30, 2023 entry stating in part, "Judge Michelle Tong recused." All three pending CHRO cases filed by Simon–*Simon v. Brabec*, *Simon v. Goldsen*, and *Simon v. Rosenthal*—were then transferred to Department 502.

3

On April 6, prior to the continued hearing, Simon filed a motion for peremptory challenge and supporting declaration. Simon requested the matter be reassigned "on the basis that [Judge Ross] is prejudiced against [Simon] in this action." He stated he did not believe he could have a fair and impartial trial or hearing before Judge Ross.[3] Judge Ross denied the challenge as untimely because the trial had already commenced and a witness (Simon) had testified. Simon requested another continuance and the court, again over Rosenthal's objections, continued the matter to April 12, 2023.

On April 10, 2023, Simon filed an ex parte motion to disqualify Judge Ross for cause. He asserted (1) a reasonable person would entertain doubt as to whether Judge Ross would be able to be impartial, (2) Judge Ross "has shown racial bias and racial prejudice against [Simon]," and (3) Judge Ross should disqualify himself but refuses to do so. Simon alleged a variety of malfeasance against Judge Ross, including that Judge Ross: (1) converted the CHRO hearing into a trial and advanced the trial date "without proper notice"; (2) improperly ruled on Simon's peremptory challenge rather than having the presiding judge decide the issue; (3) "called the Sheriff (law enforcement) on me for no legitimate or lawful reason in an attempt to threaten, humiliate, and embarrass me"; (4) had improper ex parte communications with Rosenthal; (5) violated Simon's constitutional rights under California Rules of Court, rule 1.100; (6) intentionally humiliated Simon by disclosing Simon's medical information in open court; (7) went off-

---

[3] Simon first attempted to file his motion for peremptory challenge on April 5, 2023 at 6:27 p.m., but it was rejected as a prohibited "Run-On Document." The rejection notice informed Simon he "must submit [his motion] as SEPARATE documents under the same transaction" and requested that he resubmit his filing.

record when Simon attempted to preserve objections; and (8) discriminated against Simon because of race by refusing any scheduling accommodations.

On April 11, 2024, Simon requested a fifteen-day continuance of the hearing on his CHRO. He stated he had a pending motion to disqualify Judge Ross for cause, and alleged he needed time to retain legal representation.

On April 12, 2023, the parties appeared for the continued trial. Simon appeared via Zoom. Simon again requested a continuance and objected to the court proceeding. The court denied Simon's request for a continuance, and Simon disconnected from Zoom. Simon did not respond to the clerk's email requesting he reconnect to the hearing, and he did not rejoin the hearing. The trial then continued without Simon's presence.

On April 13, 2023, Judge Ross struck Simon's statement for disqualification for cause because Simon failed to personally serve the statement on Judge Ross or his clerk as required by Code of Civil Procedure section 170.3, subdivision (c)(1). In addressing the merits, the court noted Simon's statement of disqualification "generally arises from his dissatisfaction with rulings made by this Court," which "are not grounds for disqualification." The court further concluded that "much of [Simon's] affidavit consists of conclusory allegations lacking in factual support" or are only based on "information and belief," which "are legally insufficient and may be stricken."

That same day, the court also denied Simon's request for a restraining order and dismissed his petition with prejudice. The court noted the dispute arose from disagreements over use of shared property as condominium owners, and Rosenthal's conduct was consistent with her role as HOA president and enforcing compliance with the HOA's CC&Rs. The court thus

5

concluded, based on the testimony and exhibits presented at trial, that there was no evidence of "harassment as defined by [Code of Civil Procedure] section 527.6 of Simon by Rosenthal."

On April 21, 2023, Rosenthal filed a memorandum of costs. She sought $2,538.90 in costs associated with court reporter fees, filing fees, and parking expenses. Simon moved to tax costs, alleging the requested costs were not reasonably necessary, the costs could not be verified, and Rosenthal failed to properly serve her memorandum of costs on Simon. He also asserted the memorandum of costs is "premature in light of the pending writ of mandate and motion for new trial." Rosenthal opposed the motion to tax costs. She asserted she properly filed and served her cost memorandum, Simon failed to prove any of the requested costs were unreasonable, and they were properly recoverable.

On April 24, 2023, Simon filed a petition for writ of mandate, challenging the court's order striking his statement of disqualification. This court summarily denied his petition, noting the "statement of disqualification discloses no legal grounds for disqualification."

Also on April 24, 2023, Simon moved for a new trial.[4] He raised thirteen bases for his motion, including irregularity of proceedings, accident or surprise, newly discovered evidence, excessive or inadequate damages, insufficient evidence to support the decision, decision was contrary to law, error in law, failure by Judge Ross to disclose gifts/campaign contributions and recuse himself, racial bias and prejudice, and reasonable doubt regarding Judge Ross's impartiality. Rosenthal opposed Simon's motion for new trial.

---

[4] Simon also appears to have filed a duplicative motion for new trial on May 4, 2023.

6

On June 1, 2023, Simon filed a supplemental declaration in support of his motion for new trial. He alleged (1) Rosenthal submitted a "false and obsolete condo map" to the court, (2) the court failed to consider the declarations he submitted in support of his petition, (3) the court misinterpreted the CC&Rs, (4) Rosenthal unlawfully rescinded amended CC&Rs, (5) Rosenthal violated the CC&Rs, (6) someone engaged in "witness and evidence tampering" by removing a sign posted by another owner, (7) the court failed to consider new evidence from a February 2023 HOA meeting, (8) Rosenthal never provided answers to Simon regarding his questions about HOA complaints and CC&R violations, (9) HOA insurance is not covering Rosenthal's conduct, and (10) Judge Tong did not recuse herself from this matter.

On June 7, 2023, Simon filed a "second supplemental CRC Rule 3.1306 declaration" in support of his motion for new trial. In this declaration, Simon asserted (1) Rosenthal altered how she enforced the CC&Rs against Simon as compared to a January 2022 statement by her, (2) the court failed to consider Simon's emotional injury and harm, and (3) new evidence exists indicating additional conflicts-of-interest between Rosenthal and Judge Ross based on an article in the San Francisco Trial Lawyers Association (SFTLA) magazine discussing one of Judge Ross's cases.

On June 8, 2023, the court denied Simon's motion for new trial. After considering the parties' arguments and evidence, the court "found no factual or legal basis for granting the motion."

On June 14, 2023, the court entered judgment dismissing the petition with prejudice and awarding $2,461.90 in costs to Rosenthal.

7

Simon filed objections to the court's judgment and orders. He objected on ten grounds that substantially mirrored the issues raised in his motion for new trial and supporting declarations. Simon also timely appealed.

**DISCUSSION**

On appeal, Simon challenges the validity of the trial and subsequent judgment based on his peremptory and for-cause challenges to Judge Ross, the court's failure to seal his medical records, and the trial continuing in his absence. Simon further asserts the trial court erred in awarding costs and abused its discretion in denying his motion for new trial. We address each argument in turn.

## I. The CHRO Trial

Simon raises various due process arguments regarding the CHRO trial and Judge Ross's role therein. Under state and federal law, due process entitles a party to notice and an opportunity to be heard before a neutral decision-maker. (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212.) " 'We review procedural due process claims de novo because "the ultimate determination of procedural fairness amounts to a question of law." ' " (*Severson & Werson, P.C. v. Sepehry-Fard* (2019) 37 Cal.App.5th 938, 944.) If there is a violation of due process, reversal is not required if it was harmless beyond a reasonable doubt. (*In re Enrique G.* (2006) 140 Cal.App.4th 676, 686–687.)

### A. Simon's Claims Against Judge Ross

Simon raises numerous arguments in connection with Judge Ross. He contends Judge Ross should have been disqualified as he displayed bias and a lack of impartiality during the trial.

### 1. Peremptory Challenge

Simon raises various procedural issues in connection with his peremptory challenge of Judge Ross. He first asserts the trial court denied his peremptory challenge as untimely because the court clerk erroneously rejected the filing of his initial challenge.

We need not address whether the clerk's rejection of Simon's filing was proper because it did not impact the court's analysis. " 'As a general rule, a motion for disqualification under [Code of Civil Procedure] section 170.6 is allowed any time before the commencement of the trial or hearing.' " (*Bontilao v. Superior Ct.* (2019) 37 Cal.App.5th 980, 990.) While certain exceptions apply, those provide for *shorter* windows within which to file a peremptory challenge. (*Ibid.*) After trial commences, the statute explicitly prohibits the court from considering such a motion. Code of Civil Procedure section 170.6, subdivision (a)(2) states, "*In no event* shall a judge . . . entertain the motion if it is made after the drawing of the name of the first juror, or if there is no jury, after the making of an opening statement by counsel for plaintiff, or if there is no opening statement by counsel for plaintiff, then after swearing in the first witness or the giving of any evidence or after trial of the cause has otherwise commenced." (Italics added.)

Here, the CHRO trial in this matter began at 11:10 a.m. on April 5, 2023. Simon proceeded to give his opening statement, was sworn in, and testified on his own behalf. He then attempted to file his first peremptory challenge—which was rejected by the clerk—at 6:27 p.m. on April 5, 2023. His subsequent peremptory challenge was filed the following day. Accordingly, no peremptory challenge was timely filed before the commencement of trial.

Alternatively, Simon argues the affidavit attached to his Form CH-115 (request to continue court hearing) satisfies the requirements for a disqualification motion under Code of Civil Procedure section 170.6 and should have been treated as such. We disagree.

Code of Civil Procedure section 170.6, subdivision (a)(2) requires parties to establish prejudice "by an oral or written motion." The motion must include a supporting declaration, which states "the party . . . cannot, or believes that he or she cannot, have a fair and impartial trial or hearing before the judge . . . ." (Code Civ. Proc., § 170.6, subd. (a)(2).) Subdivision (a)(6) provides a sample affidavit containing such language, and subdivision (a)(7) states that any "declaration under penalty of perjury made pursuant to this section shall include substantially the same contents as the affidavit above [in subdivision (a)(6)]." (*Id*., subds. (a)(6), (7).) Simon's request for a continuance did not seek disqualification of Judge Ross, establish prejudice, or contain the mandatory language regarding an inability to obtain a fair and impartial trial. Accordingly, Simon's declaration submitted in connection with his Form CH-115 does not satisfy the requirements of Code of Civil Procedure section 170.6.[5]

Finally, Simon asserts the trial court erred by not issuing a written order rejecting his peremptory challenge. He claims the failure to do so eliminated his ability to seek writ review. But Code of Civil Procedure section 170.6 does not require a written response in connection with peremptory challenges. Instead, the statute provides for automatic reassignment "without any further act or proof" "[i]f the motion is duly

---

[5] Simon also argues the clerk improperly rejected the filing of his Form CH-115. We need not reach this argument in light of our conclusion that this filing cannot constitute a section 170.6 challenge.

10

presented, and the affidavit or declaration under penalty of perjury is duly filed." (Code Civ. Proc., § 170.6, subd. (a)(4).) But, as noted above, the motion was not "duly presented" because it was untimely, and Simon has been able to obtain review of his due process claims in this appeal. (See *In re Marriage of M.A. & M.A.* (2015) 234 Cal.App.4th 894, 903, fn. 5 [party may obtain review of disqualification order on appeal "for claims asserting the deprivation of constitutional due process."].)

## 2. Other Claims Against Judge Ross

Simon also asserts his due process rights were violated because Judge Ross was engaged in an ongoing "controversy" with him, displayed bias, and lacked impartiality.

" 'The Due Process clause "requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case." ' [Citations.] However, ' "[o]nly in the most extreme of cases would disqualification on the basis of judge bias be constitutionally required." ' " (*Sivak v. Hardison* (9th Cir. 2011) 658 F.3d 898, 924.) As relevant here, due process requires recusal if a judge becomes "personally embroiled in a running, bitter controversy" with a litigant. (*Mayberry v. Pennsylvania* (1971) 400 U.S. 455, 465.)

Here, Simon has not identified a "running, bitter controversy" that would raise questions about Judge Ross's impartiality. The only "controversy" identified by Simon arose from the various complaints against Judge Ross that Simon sent to the presiding judge, the Court's Elimination of Bias Committee, and the Commission on Judicial Performance. The mere existence of such complaints is insufficient; otherwise, any litigant who was unhappy with a judge's rulings could assert allegations of bias and then claim that due process required recusal because of a "running controversy." Simon

11

has not cited any authority adopting such an approach, and we decline to create such a rule.

Furthermore, the evidence Simon cites—a letter to Simon from the presiding judge, an email from the chair of the court's Elimination of Bias Committee, and an email from a judge tasked with assessing Simon's complaint—does not demonstrate "there was a mounting display of an unfavorable personal attitude toward [Simon]." (See *Taylor v. Hayes* (1974) 418 U.S. 488, 501.) None of the evidence cited by Simon indicates Judge Ross allowed any "personal feelings" to impact the proceedings or otherwise took action against Simon because of the allegations. (See *id.* at p. 503.) Accordingly, Simon has failed to prove Judge Ross was "embroiled in a running, bitter controversy" with him or overcome the "strong presumption that a judge is not biased or prejudiced." (*Rhoades v. Henry* (9th Cir. 2010) 598 F.3d 511, 519.)

Next, Simon contends Judge Ross was biased, prejudiced, and lacked impartiality during the proceedings based on the following allegations:[6]

- Judge Ross received a gift from the SFTLA, a corporation in which Rosenthal is a board member.

---

[6] Simon raised these same arguments in his petition for writ of mandate—which this court denied—challenging Judge Ross's decision to strike Simon's statement of disqualification. Simon now attempts to relitigate his petition for writ of mandate challenging Judge Ross's order. However, "[t]he exclusive avenue for review of orders regarding disqualification is by writ of mandate." (*Rivera v. Hillard* (2023) 89 Cal.App.5th 964, 976.) Simon thus cannot seek review of any alleged statutory violations arising from the denial of his statement of disqualification in this appeal. However, an exception to this rule exists for claims asserting the deprivation of constitutional due process rights. (*In re Marriage of M.A. & M.A.*, *supra*, 234 Cal.App.4th at p. 903, fn. 5.) Accordingly, we consider whether Simon's allegations against Judge Ross amount to a constitutional due process violation.

12

- Judge Ross received a campaign contribution from attorney Joshua Davis, who served as defense counsel in two separate matters, *Simon v. Brabec* and *Simon v. Goldsen*.[7]

- Judge Ross "mocked and ridiculed" Simon when he made evidentiary errors during trial.

- Judge Ross imposed "arbitrary and misleading time limits" on Simon for presenting his cases.

- Judge Ross failed to consider Simon's request for accommodations under California Rules of Court, rule 1.100.

- Judge Ross demanded Simon disclose his medical information in open, public court in violation of California Rules of Court, rule 1.100(c)(4).

- Simon "was the 'only Black person in Judge Ross'[s] courtroom,' " and Judge Ross ignored his requests for accommodation while acquiescing in " 'Caucasian defendants[']' " scheduling requests sought merely for convenience.

- Judge Ross failed to disclose his status as a landlord, and appeared to be relying on his experience and preemptively concluding Simon's cameras were illegal.

- Judge Ross had an improper ex parte communication with Rosenthal.

- Judge Ross called the Sheriff on Simon for no legitimate or lawful reason, causing Simon to fear for his life.

- Judge Ross's "procedural errors" in handling Simon's statement of disqualification "is proof positive of prejudice."

Simon has not supported his allegations so as to show a due process violation. Rulings made against Simon, such as denying a continuance or

---

[7] These cases involved similar allegations against other unit owners/residents in Simon's building. However, neither those defendants nor their attorney is involved in the present dispute. Simon fails to cite any authority indicating a judge should be removed for cause under such circumstances, and we are not aware of any.

accommodation, are not evidence of bias or impartiality. (*Brown v. American Bicycle Group, LLC* (2014) 224 Cal.App.4th 665, 674 ["The trial judge's adverse legal rulings and denial of a request for a continuance do not reflect personal bias."].) Nor are allegations based on speculation or "belief" sufficient to support judicial disqualification. (See *N. Beverly Park Homeowners Ass'n v. Bisno* (2007) 147 Cal.App.4th 762, 778.)

To the extent Simon alleges the court made inappropriate comments during trial, a review of the record does not support Simon's claim. For example, Judge Ross's comment, "I think you are a member of the bar, are you not?" was made in the context of the court determining how much explanation it needed to provide regarding how to procedurally offer exhibits into evidence. When Simon responded in the affirmative, the court then stated, "Okay. So, you know what I'm talking about. If you want to admit an exhibit into evidence, you have to lay a foundation, give a copy to opposing counsel, and then we will admit it in evidence and I'll consider it."[8] Likewise, Judge Ross's comment about the cameras was an attempt to clarify whether the witness said "legally" or "illegally" because he "didn't hear." The other statements identified by Simon are likewise reasonable or insufficient to demonstrate bias when considered in the context in which they arose.

Next, Simon's allegations that Judge Ross "called the Sheriff" on Simon or engaged in ex parte communications with Rosenthal are conclusory at best as they lack context and/or factual support. Simon provides no context for either event or evidence that (1) ex parte communication occurred, or (2) the presence of a bailiff in the courtroom was targeted at Simon and was done

---

[8] We further note much of the disputed commentary cited by Simon is from the two prior trials, *Simon v. Brabec* and *Simon v. Goldsen*, and not the pending matter.

" 'for no legitimate or lawful reason.' " Nor does Simon explain how these events demonstrate that Judge Ross was not impartial or otherwise support disqualification. An appellate court "need not consider . . . a perfunctory assertion [in a brief] unaccompanied by supporting argument." (*People v. Smith* (2003) 30 Cal.4th 581, 616, fn. 8; see also *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 [appellant's burden "requires more than a mere assertion that the judgment is wrong. . . . When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived."].)

Finally, Simon's allegations regarding campaign contributions would not make " '[a] person aware of the facts' " " 'reasonably entertain a doubt that [the judge] would be able to be impartial.' " (*Eith v. Ketelhut* (2018) 31 Cal.App.5th 1, 14.) The relationship between an invitation to a dinner function—which Simon does not demonstrate was specifically aimed at Judge Ross as compared to an invitation extended to many or most local judges— and this matter is too tenuous to support disqualification.

Accordingly, Simon has failed to demonstrate Judge Ross was biased or lacked impartiality such that Simon was denied his due process rights.

**B. Other Challenges to the CHRO Trial**

Apart from his claims against Judge Ross, Simon challenges three aspects of the CHRO trial that he contends violated his due process rights: (1) the court did not properly provide notice of the reassignment from Department 505 to Department 502; (2) the court failed to seal confidential medical information; and (3) the court conducted the CHRO trial without Simon present.

## 1. Notice of Reassignment to Department 502

" 'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [Citations.]  The notice must be of such nature as reasonably to convey the required information, [citation], and it must afford a reasonable time for those interested to make their appearance [citations].  But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied. . . . [¶] . . . The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . . .' " (*Rasooly v. City of Oakley* (2018) 29 Cal.App.5th 348, 356–357.)

Simon has not shown his due process rights were violated.  Although there is no written notice in the record, courts may infer actual notice from the facts of a case.  (*In re Phillip F.* (2000) 78 Cal.App.4th 250, 259.)  This matter was one of three filed by Simon that were simultaneously transferred to Judge Ross for trial.  Simon acknowledges Department 505 orally informed him that his other cases—*Simon v. Brabec* and *Simon v. Goldsen*—had been transferred to Department 502 for trial.  The record further reflects that Judge Ross orally informed the parties all three cases had been sent to him for trial.  On April 4, 2023, after adjourning for the day, Judge Ross and the parties discussed scheduling the trial for this matter.  The court noted "[i]t was on for trial yesterday.  It was continued to today and sent to me today because I was in trial in another case—as I still am—but I will accommodate your schedule."  The court then asked when the parties would be available for

16

trial. After rejecting Rosenthal's initial request, the court suggested "tomorrow or the next day." After further discussions, the court scheduled the trial for 10:00 a.m. the following day. Simon was present for these discussions and thus received actual notice of the hearing date, time, and department. Because the court provided Simon with actual notice of the April 5, 2023 hearing in time to appear, there was no due process violation.[9] (See *In re Stephanie M.* (1994) 7 Cal.4th 295, 316 [no due process violation where party in question had both actual notice and an opportunity to be heard].)

Moreover, even if the court failed to give proper notice, any such error was harmless. (See *In re Iris R.* (2005) 131 Cal.App.4th 337, 343 ["due process error [does not] per se warrant a reversal, but rather is subject to a harmless error analysis"].) Simon appeared at the trial. After the matter was called, Simon proceeded with presenting his argument and testifying on his own behalf. He had the opportunity to call witnesses and offer evidence. At no point did he claim to be unprepared or otherwise surprised that trial was commencing in Department 502 before Judge Ross. And when he subsequently requested a continuance, it was based solely on a medical issue and unrelated to lack of notice.

### 2. Sealing of Medical Records

Simon next contends Judge Ross "demanded" he disclose private medical information in violation of California Rules of Court, rule 1.100.

The purpose of California Rules of Court, rule 1.100 is "[t]o ensure access to the courts for persons with disabilities." (Cal. Rules of Court, rule

---

[9] Simon further objects to the fact that the record does not indicate any basis for transferring the matter to Department 502. But he cites no authority for the proposition that courts require cause to transfer a matter to another department.

17

1.100(b).) A request for accommodation "must be made . . . no fewer than 5 court days before the requested implementation date." (Cal. Rules of Court, rule 1.100(c)(3).) Such request "must include a description of the accommodation sought, along with a statement of the medical condition that necessitates the accommodation." (Cal. Rules of Court, rule 1.100(c)(2).)

Here, nothing in the record indicates Simon made a request for accommodation as a "person with disabilities" pursuant to these requirements. Rather, Simon references an oral motion he made in the middle of the CHRO trial. Because Simon failed to make the request five days prior to the implementation date—i.e., the date of trial—the court properly considered Simon's request as a motion to continue.

Nor did the court fail to seal or improperly disclose medical information. While the court initially stated it "can seal the [doctor's] note," the court then commented "[i]t doesn't sound like [the note] can be made part of the record because you don't have it in the courtroom." Simon acknowledged "I do not have a printed copy." The court then reviewed an electronic version of the letter, noted it did not give any details about Simon's medical condition, and stated, "The note that I saw simply said you're off work for one day today, April 5th. It doesn't say anything more than that." Simon explained, "because of HIPAA, [the doctors] will never put in writing what your medical condition is . . . and what they have diagnosed." The court, after noting "[t]here is no HIPAA information in there," read the letter into the record. The court then granted Simon's request for a one-day continuance over Rosenthal's objection. Both Simon and the court noted there was no HIPAA information provided, Simon did not move to have the

18

transcript sealed, and Simon has failed to cite any authority suggesting the court was obligated to seal any of the provided information. [10]

### 3. Simon's Presence at Trial

Simon claims the court violated his due process rights when it conducted the CHRO trial without Simon "being present and . . . having no opportunity to rebut, refute, or defend against any of Rosenthal's claims." Simon grossly misrepresents the proceedings. To the contrary, Simon was present, had the opportunity to "rebut, refute, or defend" his case, and then voluntarily absented himself from the proceedings.

### i. Relevant Facts

The CHRO trial began on April 5, 2023. Simon started presenting his case at that time. Both he and Rosenthal were sworn in as witnesses, and Simon began testifying on his own behalf. However, he subsequently requested—and received—a continuance to April 6 and a subsequent continuance to April 12. On April 12, Simon appeared via Zoom and, rather than proceed with his case, again requested a continuance. He based this request on a motion to disqualify he filed the prior day and an alleged need to retain trial counsel. The court held neither basis constituted good cause for a continuance. The court concluded Simon failed to explain his extensive delay in seeking trial counsel. The court also noted Code of Civil Procedure section

---

[10] California Rules of Court, rule 2.550(d) provides that a court may order a record sealed "only if it expressly finds facts that establish: [¶] (1) There exists an overriding interest that overcomes the right of public access to the record; [¶] (2) The overriding interest supports sealing the record; [¶] (3) A substantial probability exists that the overriding interest will be prejudiced if the record is not sealed; [¶] (4) The proposed sealing is narrowly tailored; and [¶] (5) No less restrictive means exist to achieve the overriding interest." Nothing in the record suggests Simon made the requisite showing on any of these factors.

170.4, subdivision (c)(1) allows judges to proceed with a trial " '[i]f a statement of disqualification is filed after a trial or a hearing has commenced.' " The court thus exercised its discretion to continue the trial despite the pending disqualification motion.

After the court denied Simon's request for continuance, Simon requested a ten-minute recess. The court granted the request. Upon his return, Simon stated he was unable to litigate the matter "for the reasons I submitted in my request for a stay and a continuance" and logged off Zoom. The clerk attempted unsuccessfully to contact Simon, and informed him via email "[i]f you do not join, the hearing will proceed in your absence." Simon did not rejoin Zoom or otherwise respond, and the trial proceeded.

### ii. Analysis

Simon cites nothing in the record demonstrating that the court refused to allow him to appear at trial or hindered his ability to do so. To the contrary, Simon was aware of the hearing, initially appeared, and then voluntarily logged off Zoom when the court declined his most recent request for a continuance. He also failed to respond to the clerk's subsequent email requesting he rejoin the proceedings. Such facts do not evidence a due process violation. (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 ["the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment"].)

While "[a] civil litigant has a constitutional right to be represented by counsel at trial," the court did not interfere with this right. (See *Oliveros v. County of Los Angeles* (2004) 120 Cal.App.4th 1389, 1398.) The court did not prohibit Simon from retaining counsel or having that counsel appear. Rather, the court concluded Simon's *desire* to retain counsel did not

20

constitute good cause for a continuance as the trial had begun, Simon was an attorney, Simon had tried the two prior cases without indicating any need for trial counsel, and the court had already granted Simon multiple continuances in this matter.

Likewise, the court did not err in denying Simon's request to voluntarily dismiss the matter without prejudice. "A plaintiff's right to voluntarily dismiss an action ceases at the 'commencement of trial.' " (*Lewis C. Nelson & Sons, Inc. v. Lynx Iron Corp*. (2009) 174 Cal.App.4th 67, 76.) Because the CHRO trial had already commenced, Simon did not have a "statutory right" to dismiss his case without prejudice.

## II. Judge Ross Was Entitled to Proceed With the CHRO Trial and Post-Trial Proceedings After Simon Filed His Disqualification Motion

Simon incorrectly asserts the court was unable to rule on his CHRO request, deny his motion for new trial, or grant Rosenthal's memorandum of costs after Simon filed his statement of disqualification. Code of Civil Procedure section 170.4, subdivision (c)(1) provides, "If a statement of disqualification is filed after a trial or hearing has commenced . . . by the swearing of the first witness . . . , the judge whose impartiality has been questioned may order the trial or hearing to continue, notwithstanding the filing of the statement of disqualification." Here, trial had commenced, Simon had been sworn in as the first witness, and he had begun testifying on his own behalf. Accordingly, Judge Ross was entitled to proceed with the trial despite Simon's statement of disqualification.

Simon next argues Judge Ross "did not take any of the permissible actions in response to [his] April 10 statement of disqualification." However, any allegation that Judge Ross failed to comply with his statutory obligations in connection with Simon's statement of disqualification must be resolved by

21

a writ petition and are inappropriate for appeal; only constitutional violations may be asserted on appeal.  (See Part I.A.2., footnote 6, *ante*.)

## III.  Award of Costs

Simon contends Rosenthal was not entitled to her cost award, and such costs were sought and awarded as a form of punitive damages against Simon.

Simon first asserts Rosenthal's motion for costs were "untimely," "not properly served," and "the costs sought were unnecessary and unreasonable." However, Simon fails to provide any evidence to support his argument.  He does not provide any details regarding how and when the motion for costs was served, and why such service was defective.  Moreover, Simon does not contend any alleged service error hindered his ability to file his motion to tax costs or otherwise respond.

Simon also argues (1) Code of Civil Procedure section 527.6 did not intend to allow for "such excessive fees" against a harassment victim, and (2) Rosenthal is barred from seeking costs because she failed to denote such costs in her form CH-120.  Simon "fails to support [these arguments] with reasoned argument and citations to authority, [and] we treat the point[s] as waived." (*Benach v. County of Los Angeles*, *supra*, 149 Cal.App.4th at p. 852.)

## IV.  Denial of Motion for New Trial

Simon contends he timely filed a motion for new trial and lists the thirteen bases on which his motion was based.  He asserts his motion included grounds such as "[i]rregularity in the proceedings," "accident or surprise," "newly discovered evidence," and "excessive or inadequate damages."  Simon's subsequent argument is contained in one sentence: "But the structure errors were a miscarriage of justice and requires reversal and a new trial."

A new trial motion may be granted based on irregularity in the court proceedings, accident or surprise, newly discovered evidence, insufficient evidence to justify the verdict or other decision, or for any error in law, which occurred at the trial and to which the party making the new trial motion objected. (Code Civ. Proc., § 657, subds. 1, 3, 4, 6 & 7.) While Simon listed all these as grounds for his new trial motion, he failed to explain *why* they support his claim for new trial and *why* the trial court erred in denying his motion. (*Howard v. American National Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 523 ["Conclusory assertions of error are ineffective in raising issues on appeal."].) Having failed to elaborate or support his position, Simon's argument is deemed forfeited.

## DISPOSITION

The judgment is affirmed. Rosenthal may recover her costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

_____

Petrou, J.


WE CONCUR:


_____

Tucher, P.J.


_____

Rodríguez, J.


A168225/*Simon v. Rosenthal*