Filed 10/25/18; Modified and Certified for Publication 11/21/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MICHAEL RASOOLY,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>CITY OF OAKLEY,<br><br>        Defendant and Respondent. | A152709<br><br>(Contra Costa County<br>Super. Ct. No. N16-1492) |

The City of Oakley (City) initiated abatement proceedings seeking to demolish an industrial building owned by Michael Rasooly. Rasooly sought a writ of mandate in superior court, challenging the City's abatement order. While that matter was pending, the City initiated a second administrative abatement action on the same property. Rasooly amended his mandamus complaint to challenge the second action. The City filed a motion for judgment on the basis that Rasooly had failed to pursue his administrative remedy. The trial court granted the motion. We affirm.

## I.     FACTS AND PROCEDURAL HISTORY

The facts appear largely undisputed. Rasooly owns a vacant industrial building at 150 Acme Street in Oakley (Property).[1] The City "red tagged" the building on July 1, 2015, alleging structural deterioration rendered it unsafe to occupy. The City issued a "Notice and Order to Repair or Demolish Structure" in August 2015 (the 2015 Notice). Rasooly appealed the 2015 Notice and, in June 2016, the Oakley City Council rejected

---

[1] A report by a City-retained engineer indicates two buildings are located at 150 Acme Street, and the structure at issue is identified as "Building 2."

1

his appeal.  On August 4, 2016, Rasooly filed a petition for writ of mandate in the Contra Costa County Superior Court, seeking an order that the City set aside its decision.[2] Rasooly and the City engaged in settlement discussions.  The City agreed to rescind the 2015 Notice, and Rasooly was to provide building plans responsive to certain City comments on earlier submitted plans and complete all required work by April 15, 2017.  The City requested dismissal of the petition based on this understanding.  Rasooly's counsel said more time was required to complete the anticipated work, and the City replied that at least the necessary stabilization work needed done within the time requested.  Rasooly's counsel did not respond to an October 24, 2016 e-mail asking for follow-up.  Between August 2016 and January 2017, Rasooly and Dean Hurney, the City's permit center manager, communicated by e-mail concerning plans submitted by Rasooly for Property repairs and modifications.  On December 22, 2016, Rasooly advised Hurney that he would submit additional plan revisions.  City offices were closed between December 22, 2016, and January 8, 2017.  Hurney advised Rasooly of his availability by e-mail on January 9, 2017.  Hurney received no response.

On March 1, 2017, the City issued a new notice and order that the Property be repaired or demolished (the 2017 Notice).  The City physically posted the 2017 Notice on the Property.  The City also sent the 2017 Notice by certified mail to a post office box listed as Rasooly's address on county tax rolls for the Property.  The mailing was returned undelivered.  After the 20-day period provided under the Oakley Municipal Code for administrative appeal of the 2017 Notice lapsed,[3] the City advised Rasooly's attorney of the 2017 Notice on April 4, 2017.  On April 5, 2017, Rasooly's counsel filed

---

[2] The City Attorney averred the City received a notice of acknowledgement and receipt for the original petition by e-mail on the date it was filed, but the City never executed this notice and was not otherwise served with the original petition.

[3] The trial court granted the City's unopposed request to take judicial notice of the relevant provisions of the Oakley Municipal Code and 2012 International Property Maintenance Code (IPMC).  The Oakley Municipal Code has adopted the IPMC by reference.  (Oakley Mun. Code, § 7.1.102.)  IPMC section 111.1 provides for a 20-day period for administrative appeal.  (Cf. Oakley Mun. Code, § 1.8.004 [time for administrative appeal when not otherwise specified no longer than 20 calendar days].)

a first amended petition for writ of administrative mandamus challenging the 2017 Notice. The City moved for judgment based on Rasooly's failure to exhaust his administrative appeal remedy. Rasooly opposed, arguing he did not receive actual notice of the administrative proceedings and service of the 2017 Notice did not comply with the requirements of the IPMC.[4] The trial court granted the City's motion and dismissed the amended petition.

## II.    DISCUSSION

### A.    *Standard of Review*

A motion for judgment under Code of Civil Procedure section 1094 is the proper (and exclusive) procedural means for seeking a streamlined review of an agency's decision.[5] (*Dunn v. County of Santa Barbara* (2006) 135 Cal.App.4th 1281, 1293.) Both parties agree we are presented here with only questions of law on undisputed facts. Our review of the trial court's grant of the City's motion for judgment is, therefore, de novo. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799.)

### B.    *Administrative Exhaustion Requirement*

It is undisputed that Rasooly did not seek administrative review of the 2017 Notice. The requirement of exhaustion of available administrative remedies is a jurisdictional prerequisite and not a matter of judicial discretion. (*Environmental Law Fund, Inc. v. Town of Corte Madera* (1975) 49 Cal.App.3d 105, 111.) " 'The exhaustion doctrine . . . operates as a defense to litigation commenced by persons who have been aggrieved by action taken in an administrative proceeding which has in fact occurred but who have failed to 'exhaust' the remedy available to them in the course of the proceeding itself.' " (*Tahoe Vista Concerned Citizens v. County of Placer* (2000) 81 Cal.App.4th

---

[4] Rasooly averred he had no occasion to visit the Property, had not checked his post office box, and never actually received the 2017 Notice during this period. The City does not contend Rasooly received actual notice of the administrative proceedings.

[5] Code of Civil Procedure section 1094 provides in pertinent part that "[i]f a petition for a writ of mandate . . . presents no triable issue of fact or is based solely on an administrative record, the matter may be determined by the court by noticed motion of any party for a judgment on the peremptory writ."

577, 589.) " 'The requirement of exhaustion of administrative remedy is founded on the theory that the administrative tribunal is created by law to adjudicate the issue sought to be presented to the court, and the issue is within its special jurisdiction.  If a court allows a suit to go forward prior to a final administrative determination, it will be interfering with the subject matter of another tribunal.' "  (*Ibid.*)

Section 111.1 of the City-adopted IPMC provided an appeal mechanism from 2017 Notice, with review by the City Council—a procedure invoked by Rasooly for the 2015 Notice.[6]  The only question is whether Rasooly was properly served with the 2017 Notice.

C.      *Notice*

It is undisputed Rasooly did not actually receive the 2017 Notice.  Rasooly contends the City failed to comply with IPMC notice requirements, and the City's failure to provide actual notice deprived him of due process.

1.      *IPMC Notice Requirements*

IPMC section 106.2 provides that a notice of violation of its provisions shall be served by a code official "in accordance with Section 107."  (See IPMC, § 110.2 [demolition notices and orders "shall comply with Section 107"].)  IPMC section 107.3 states that a notice of code violation is properly served if a copy is:  "1. Delivered personally; 2. Sent by certified or first-class mail addressed to the [owner's] last known address; *or* 3. If the notice is returned showing that the letter was not delivered, a copy thereof shall be posted in a conspicuous place in or about the structure affected by such notice."  (Italics added.)  The City concurrently posted the 2017 Notice on the Property and sent a copy by certified mail to Rasooly's post office box address of record.  Rasooly argues the IPMC requires a sequential procedure, with physical posting only appropriate

---

[6] "Any person directly affected by a decision of the *code official* or a notice or order issued under this code shall have the right to appeal to the board of appeals, provided that a written application for appeal is filed within 20 days after the day the decision, notice or order was served."  (IPMC, § 111.1; see Oakley Mun. Code, §§ 7.2.112, subd. (b)(5) & 1.8.002 et seq. [appeal procedures].)

4

if a certified mailing is first returned undelivered. He cites a commentary to IPMC section 107.3 observing that "[d]elivery by certified or registered mail addressed to the owner or the owner's designated agent at the last known address, with a return receipt requested . . . is a valid method of service, but sometimes is not reliable. . . . [¶] . . . If the certified or registered letter is returned as undeliverable, posting a copy in an easy to see place in or about the structure will suffice. *Since the code official must wait until the post office returns undeliverable certified letters before they can be posted, this form of service is very time consuming.*" (International Code Council, Inc. (2015) International Property Maintenance Code Commentary, p. 1-9, italics added; hereafter IPMC Commentary.) Rasooly posits that compliance with the later posting procedure would have provided him with 20 days from the March 31, 2017 return date of the certified letter to perfect an appeal. He contends failure to comply with this serial process renders service ineffective.

The City responds that IPMC section 107.3 must be read in conjunction with other provisions of the Oakley Municipal Code. It acknowledges a conflict between IPMC section 111.1, requiring a written application for appeal be filed within 20 days after the day the decision, notice or order was *served*, and a separate general section of the municipal code dealing with administrative appeals (Oakley Mun. Code, § 1.08.004), requiring a notice of appeal from an adverse city administrative decision be filed with "within 14 calendar days after the date written notice of such action appealed from was *mailed or personally delivered* to the appellant, but in no event later than 20 calendar days after the date of such action." (Italics added.) The City also notes neither IPMC section 111.1 nor Oakley Municipal Code section 1.08.004 requires more than personal delivery or mailing. The City also observes that the IPMC commentary relied upon by Rasooly is expressly "advisory only" (IPMC Commentary, *supra*, at p. III), and it highlights additional commentary that "[i]n some communities, the courts may consider service to be valid if notice was sent to the last known address of the owner" (*id.* at p. 1-9).

5

We apply established rules of statutory to interpretation of municipal ordinances. (See *Metromedia, Inc. v. City of San Diego* (1982) 32 Cal.3d 180, 188.) " 'In construing any statute, we first look to its language. [Citation.] "Words used in a statute . . . should be given the meaning they bear in ordinary use. [Citations.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . ." [Citation.] "If the language permits more than one reasonable interpretation, however, the court looks 'to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' [Citation.]" [Citation.]' [Citation.] Also, a statute ' "must be given a reasonable and common sense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity." ' " (*DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 992.)

Rasooly's proposed interpretation of IPMC section 107.3 is that the ordinance imposes sequential requirements for mailing and posting, and the City's failure to observe the temporal sequence creates a fatal defect in service. We disagree.

As noted by the City and trial court's order granting the motion for judgment, we observe that posting the 2017 Notice on the Property *after* unsuccessful attempted service by certified mail, as Rasooly contends is required, would have rendered any response by Rasooly to the posted notice untimely under Oakley Municipal Code section 1.8.004—a result not likely to have been intended in adoption of the IPMC. (See Oakley Mun. Code, § 7.2.112, subd. (b)(5) [IPMC § 111 "Means of Appeal" amended to include "General" paragraph reading: "Any appeals of City determinations under this chapter shall occur as specified in Title 1 Chapter 8 of [Oakley Mun. Code]"].) We also observe the underlying purpose of each service method specified in IPMC section 107.3 is to provide *notice* to the property owner of the existence and nature of the violation, the requirements for compliance, and of the right to seek modification or withdrawal of the order through

6

appeal.  (IPMC Commentary, *supra*, at p. 1-9 [describing IPMC § 107.1 notice requirements].)

We think a more reasonable, and internally consistent, reading of IPMC section 107.3 is that it provides a hierarchy of acceptable means of providing notice to the owner of property subject to enforcement action, any one of which can constitute "service" of the notice.  (See IPMC Commentary, *supra*, at p. 1-9 ["[p]roper service requires *one* of the following methods . . ." (italics added)].)  Personal delivery is "[t]he most effective form of service"; delivery by certified or registered mail is "a valid method of service, but sometimes . . . not reliable"; if service by certified mail is not successful "posting a copy in an easy to see place in or about the structure will suffice."  (*Ibid*.)  In other words, posting on the property alone, while perhaps constituting sufficient service, is not preferred without attempted certified mailing.

Moreover, reading the ordinance to preclude concurrent posting and mailing would make little sense.  Simultaneous mailing and posting would be more likely to provide timely notification to a property owner of a pending City action, rather than less.  Certainly, in this instance, nothing in the record suggests Rasooly would have learned of the 2017 Notice had it been posted on April 1, rather than earlier, when he avers he had no occasion to visit the Property at all during this period and only became aware of the 2017 Notice through his attorney.

2.      *Due Process*

Rasooly argues that "nail & mail" procedures are, in any event, constitutionally deficient in the absence of efforts at personal service.  We find no support for that proposition.

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [Citations.]  The notice must be of such nature as reasonably to convey the required information, [citation], and it must afford a reasonable time for those interested to make their appearance [citation].  But if with due

7

regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied. . . . [¶] . . . The means employed [to give notice to interested parties] must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.  The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . . .” (*Mullane v. Central Hanover Tr. Co.* (1950) 339 U.S. 306, 314–315 (*Mullane*).)

Rasooly’s arguments assume actual notice is the constitutional touchstone.  But due process of law does not require actual notice, only a method reasonably certain to accomplish that end.  (*Evans v. Department of Motor Vehicles* (1994) 21 Cal.App.4th 958, 971 [registered/certified mailing under Gov. Code, § 11505 to agency address of record constitutionally sufficient].)  “*Mullane* makes it clear that due process of law does not require actual notice, but only a method reasonably certain to accomplish that end.  [Citations.]  ‘If the form of substituted service is reasonably calculated to give an interested party actual notice of the proceedings and an opportunity to be heard, the traditional notions of fair play and substantial justice implicit in due process are satisfied.’ ” (*Evans*, at p. 967; accord, *Baughman v. Medical Board* (1995) 40 Cal.App.4th 398, 402.)

The 2017 Notice was sent by certified mail, as provided in IPMC section 107.3, to the post office box that was Rasooly’s address of record, and it was delivered to that address.  Rasooly did not actually receive it, not because the address was incorrect, but because he elected not to check for his mail at this address for a period of at least 30 days—despite being advised at least twice that he had uncollected certified mail waiting.  Similarly, Rasooly was unaware of the posted notice on the Property only because he chose not to visit a location he knew was subject to unresolved code enforcement issues.  The City suggests Rasooly’s failure to receive actual notice was the consequence of his “deliberate ignorance” or “careless indifference.”  We need not make

such a determination.[7]  "[The City] fulfilled its statutory obligation by sending [Rasooly] the [2017 Notice] by certified mail to the address[] in its records.  Actual notice was not required."  (*Miller Family Home, Inc. v. Department of Social Services* (1997) 57 Cal.App.4th 488, 493.)

## III.    DISPOSITION

The judgment of dismissal is affirmed.  The parties shall bear their own costs on appeal.

---

[7] The trial court's conclusion that Rasooly had "only himself to blame" for failure to actually receive the 2017 Notice appears apt.  However, we also observe that, while not constitutionally mandated, the City could have obviated the issues presented in this appeal and avoided the associated expense and extended delay through the simple professional courtesy of a telephone call to Rasooly's counsel of record in the then pending mandamus petition.  However, absent evidence (and any trial court finding) of a calculated effort by the City to *avoid* giving actual notice to Rasooly, we find no authority imposing a legal obligation to do so.

_____

BRUINIERS, J.

WE CONCUR:


_____

JONES, P. J.


_____

SIMONS, J.

A152709

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MICHAEL RASOOLY,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>CITY OF OAKLEY,<br><br>        Defendant and Respondent. | A152709<br><br>(Contra Costa County<br>Super. Ct. No. MSN16-1462)<br><br>**ORDER CERTIFYING OPINION FOR PUBLICATION AND CORRECTING TRIAL COURT NO.** |

THE COURT:

The opinion in the above-entitled matter filed on October 25, 2018, was not certified for publication in the Official Reports.  On November 15, 2018, a request for publication was received from the League of California Cities pursuant to California Rules of Court, rule 8.1120(a)(1), but one day after the time allowed for such a request expired (*id.*, rule 8.1120(a)(3)).  As this court's opinion is not yet final, we accept the request for publication for filing.

For good cause appearing, this court grants the publication request and orders the opinion certified for publication pursuant to California Rules of Court, rule 8.1105(b), (c).  It is further ordered that the superior court case number listed in the case title of the originally filed opinion shall be corrected to reflect the number used in the case title of this order.


Date_____        _____P.J.

Superior Court of Contra Costa County, No. MSN16-1462, Charles S. Treat, Judge.

Jenny & Jenny, Scott E. Jenny and Richard K. Jenny for Plaintiff and Appellant.

Cota Cole & Huber, Derek P. Cole and Elizabeth M. Perez for Defendant and Respondent.