Filed 9/3/24  Simon v. Brabec CA1/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| LORAN SIMON,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>TODD BRABEC,<br><br>        Defendant and Respondent. | A168223<br><br>(San Francisco City & County<br> Super. Ct. No. CCH-22-584550) |
| LORAN SIMON,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>WHITNEY GOLDSEN,<br><br>        Defendant and Respondent. | A168226<br><br>(San Francisco City & County<br> Super. Ct. No. CCH-22-584652)<br><br>ORDER MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

**BY THE COURT:**

It is ordered that the opinion filed herein on August 30, 2024, be modified as follows:

1.  On page 23, the last sentence and citation in the disposition that reads "Respondents may recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)" should be deleted and replaced with a new sentence and citation that reads: "The court denies awarding costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)"

There is no change in the judgment.


Dated: 9/3/2024                    /s/Tucher, P. J.
                                   Tucher, P. J.

Filed 8/30/24  Simon v. Brabec CA1/3 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LORAN SIMON, <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> TODD BRABEC, <br><br>     Defendant and Respondent. | A168223 <br><br> (San Francisco City & County <br>   Super. Ct. No. CCH-22-584550) |
| LORAN SIMON, <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> WHITNEY GOLDSEN, <br><br>     Defendant and Respondent. | A168226 <br><br> (San Francisco City & County <br>   Super. Ct. No. CCH-22-584652) |

Loran Simon appeals from two judgments denying his requests for civil harassment restraining orders (CHRO) against defendants Todd Brabec and Whitney Goldsen.[1]  He contends the trials were marred by numerous due process violations, including both procedural issues and alleged bias by the presiding judge.  Simon also asserts the trial court erred in awarding

---

[1] On April 26, 2024, this court granted Simon's unopposed motion to consolidate *Simon v. Brabec* (Case No. A168223) and *Simon v. Goldsen* (Case No. A168226).

attorney's fees and denying his motions for new trial. We disagree and affirm the judgments.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

Simon and Brabec own separate units within a three-unit building in San Francisco. Brabec has owned his unit since 2004, and Simon owned his unit since 2021. Both serve on the Homeowners Association (HOA) board. Goldsen is a tenant in Brabec's unit.

On April 6, 2022, Simon sought a temporary restraining order and CHRO against Brabec. Simon alleged that (1) Brabec repeatedly sent Simon "9 harassing emails" after Simon requested that Brabec not communicate with him, (2) forged Simon's name on a USPS parcel, (3) mailed Simon "torn-up and ripped-up envelopes and documents," (4) engaged in belligerent and racist behavior, (5) closed a door leading to Simon's unit to make it physically difficult for him to access his unit, (6) intentionally played loud music, and (7) had unauthorized workers in the yard without providing notice to Simon.

On May 9, 2022, Simon sought a temporary restraining order and CHRO against Goldsen. Simon asserted Goldsen intentionally hit Simon with a door and continuously closed a door leading to Simon's unit, making it difficult for Simon to access his unit.[3]

---

[2] On March 12, 2024, Simon filed an unopposed motion to augment in *Simon v. Brabec*, which this court granted on March 28, 2024. On April 5, 2024, Simon filed an unopposed motion to augment in *Simon v. Goldsen*, which we now grant.

[3] Simon also filed two other CHRO requests. One CHRO was against another unit owner in the building, Deborah Rosenthal. The trial court denied that CHRO request, which is the subject of a separate appeal currently pending before this court, *Simon v. Rosenthal* (Case No. A168225). The other CHRO was against the co-owner of Brabec's unit, *Simon v. Nancy Goldsen*. That matter is not before this court.

2

Brabec and Goldsen both denied the allegations in response to the CHRO requests. Brabec stated Simon engaged in numerous instances of verbal abuse and threats of litigation after he and Rosenthal declined to amend the Covenants, Conditions, & Restrictions (CC&Rs) to either grant Simon exclusive use of the shared deck and backyard or allow him to build a separate deck on the rear of his unit. Brabec noted he had never met Simon in person as Brabec resides in Southern California. Goldsen stated she did not intentionally hit Simon with a door and was unaware he was leaning against the opposite side of the door when she attempted to open it. She "ha[d] not touched the fire door leading to [Simon's] unit" but noted the Fire Marshall had previously issued violations due to failures to keep the door closed.

The CHROs were initially scheduled to be heard on June 10, 2022. The matters were continued six times, to an eventual hearing date of April 4, 2023.

On February 10, 2023, Simon filed an amended CHRO request. He alleged Goldsen intentionally vandalized and destroyed notices and signage Simon had placed in the building and the "private corridor leading to my unit." Simon alleged this conduct was racially motivated. Goldsen again denied the allegations, stating the signs were removed because they were not authorized by the HOA board and violated the CC&Rs.

On March 30, 2023, the dockets in *Simon v. Brabec* and *Simon v. Goldsen* indicate Judge Tong in Department 505 was recused, and the matter was "continued" to the same date and time but in Department 502 before Judge Ross. All parties appeared as ordered on April 4, 2023. The record does not reflect any party objecting to the commencement of trial in Department 502 at that time. The court first tried *Simon v. Brabec* followed

3

by *Simon v. Goldsen*, with the *Goldsen* matter concluding the morning of April 5, 2023. The evening of April 4, 2023, Simon sought to continue the *Goldsen* matter due to alleged bias by Judge Ross.[4] The filing was rejected as Simon had used an outdated form, and it is unclear whether Simon refiled the request.

On April 13, 2023, Simon sought to file a motion to disqualify Judge Ross for cause. The motion asserted (1) a reasonable person would entertain doubt as to whether Judge Ross would be able to be impartial, (2) Judge Ross "has shown racial bias and racial prejudice against [Simon]," and (3) Judge Ross should disqualify himself but refuses to do so. Simon alleged a variety of malfeasance against Judge Ross, including that Judge Ross: (1) failed to disclose a campaign contribution from defense counsel; (2) failed to disclose a gift from the San Francisco Trial Lawyers Association; (3) converted the CHRO hearing into a trial and advanced the trial date "without proper notice"; (4) prevented Simon from filing a peremptory challenge; (5) "called the Sheriff (law enforcement) on me for no legitimate or lawful reason in an attempt to threaten, humiliate, and embarrass me"; (6) had improper ex parte communications with opposing counsel; (7) "intentionally went off-record" when Simon sough to preserve objections; (8) discriminated against Simon because of race by refusing any scheduling accommodations and "show[ing] preferential treatment to Caucasian parties"; and (9) likely had notice of various complaints Simon lodged against Judge Ross with the Offices of the Presiding Judges and other administrative bodies.

The clerk's office rejected these filings because the court had entered orders on April 10 and 11 denying the CHRO requests and dismissing the

---

[4] Simon asserts he sought a request for accommodations, but the cited records only contain a request for a continuance.

4

petitions with prejudice. Simon filed subsequent statements of disqualification on May 19, 2023.

Simon then moved for a new trial. He raised thirteen bases for his motion, including irregularity of proceedings, accident or surprise, newly discovered evidence, excessive or inadequate damages, insufficient evidence to support the decision, decision was contrary to law, error in law, failure by Judge Ross to disclose gifts/campaign contributions and recuse himself, racial bias and prejudice, and reasonable doubt regarding Judge Ross's impartiality.

In advance of the hearing, Simon filed "supplemental CRC Rule 3.1306" declarations in support of his motion for new trial. These declarations raised numerous other arguments, including that Goldsen was not an owner or HOA member, the CC&Rs were fraudulently rescinded, the court misinterpreted the CC&Rs, the existence of "new evidence" from HOA meetings, and allegations of witness and evidence tampering.

On June 12, 2023, Simon filed a petition for writ of mandate, challenging the court's order striking his statement of disqualification in *Simon v. Brabec*. On June 15, 2023, Simon filed a petition for writ of mandate, challenging the court's order striking his statement of disqualification in *Simon v. Goldsen*. Simon filed subsequent petitions for writ of mandate related to his statements of disqualification in both matters on September 12, 2023. After issuing *Palma*[5] notices in response to the initial petitions, this court denied Simon's second set of petitions. (See *Simon v. Superior Court of the City and County of San Francisco* (Case No. A168666); *Simon v. Superior Court of the City and County of San Francisco* (Case No. A168665).)

---

[5] *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171

5

On June 14, 2023, the court denied Simon's motions for new trials. After considering the parties' arguments and evidence, the court "found no factual or legal basis for granting" either motion. Simon filed objections to the court's judgments and orders. He objected on numerous grounds that substantially mirrored the issues raised in his motion for new trial and supporting declarations.

On June 30, 2023, the court entered judgments in both matters. Those judgments dismissed the respective petitions with prejudice and awarded $21,505.00 in attorney's fees to Brabec and $7,507.50 in attorney's fees to Goldsen. Simon timely appealed.

**DISCUSSION**

On appeal, Simon challenges the validity of the trials and subsequent judgments based on his for-cause challenges to Judge Ross, the court's failure to properly consider his accommodation request, and the court's failure to properly notice the transfer of trial to Department 502. Simon further asserts the trial court erred in awarding attorney fees and costs and abused its discretion in denying his motions for new trial. We address each argument in turn.

## I. The CHRO Trials

Simon raises various due process arguments regarding the CHRO trials and Judge Ross's role therein. Under state and federal law, due process entitles a party to notice and an opportunity to be heard before a neutral decision-maker. (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212.) " 'We review procedural due process claims de novo because "the ultimate determination of procedural fairness amounts to a question of law." ' " (*Severson & Werson, P.C. v. Sepehry-Fard* (2019) 37 Cal.App.5th 938, 944.) If there is a violation of due

6

process, reversal is not required if it was harmless beyond a reasonable doubt. (*In re Enrique G.* (2006) 140 Cal.App.4th 676, 686–687.)

## A. Simon's Claims Against Judge Ross

Simon contends Judge Ross should have been disqualified as he displayed bias and a lack of impartiality during the trial. He further contends Judge Ross's bias violated his due process rights to an impartial judge.

### 1. Statement of Disqualification for Cause

Simon asserts the court erred in rejecting his April 2023 statement of disqualification for cause. Simon asserts his statement of disqualification should have been determined by another judge under the procedures set forth in the Code of Civil Procedure, and a "different result" would have been "reasonably probable" without the error.

Simon was required to raise this argument in a petition for writ of mandate, and it cannot be raised on appeal.[6] "The exclusive avenue for review of orders regarding disqualification is by writ of mandate." (*Rivera v. Hillard* (2023) 89 Cal.App.5th 964, 976.) While an exception to this rule exists for claims asserting a deprivation of constitutional due process rights, Simon's argument focuses on statutory compliance. (*In re Marriage of M.A. & M.A.* (2015) 234 Cal.App.4th 894, 903, fn. 5 [party may obtain review of disqualification order on appeal "for claims asserting the deprivation of constitutional due process."].)

---

[6] And, in fact, Simon raised these issues in multiple writ petitions, which were resolved by this court. (See, e.g., *Simon v. Superior Court of the City and County of San Francisco* (Case No. A167996); *Simon v. Superior Court of the City and County of San Francisco* (Case No. A168033); *Simon v. Superior Court of the City and County of San Francisco* (Case No. A168665); *Simon v. Superior Court of the City and County of San Francisco* (Case No. A168666).)

Simon thus cannot seek review of any alleged statutory violations arising from the denial of his statement of disqualification in this appeal.  To the extent he reasserts his claims of bias and lack of impartiality that formed the basis for his disqualification motion in his assertion of a due process violation, we address those arguments in Part I.A.2., *post*.

## 2.  Other Claims Against Judge Ross

Simon also asserts his due process rights were violated because Judge Ross was engaged in an ongoing "controversy" with him, displayed bias, and lacked impartiality.

" 'The Due Process clause "requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case." ' [Citations.]  However, ' "[o]nly in the most extreme of cases would disqualification on the basis of judge bias be constitutionally required." ' " (*Sivak v. Hardison* (9th Cir. 2011) 658 F.3d 898, 924.)  As relevant here, due process requires recusal if a judge becomes personally "embroiled in a running, bitter controversy" with a litigant.  (*Mayberry v. Pennsylvania* (1971) 400 U.S. 455, 465.)

Here, Simon has not identified a "running, bitter controversy" that would raise questions about Judge Ross's impartiality.  The only "controversy" identified by Simon arose from the various complaints against Judge Ross that Simon sent to the presiding judge, the Court's Elimination of Bias Committee, and the Commission on Judicial Performance.  The mere existence of such complaints is insufficient; otherwise, any litigant who was unhappy with a judge's rulings could assert allegations of bias and then claim that due process required recusal because of a "running controversy."  Simon has not cited any authority adopting such an approach, and we decline to create such a rule.

8

Furthermore, the evidence Simon cites—a letter to Simon from the presiding judge, an email from the chair of the court's Elimination of Bias Committee, and an email from a judge tasked with assessing Simon's complaint—does not demonstrate "there was a mounting display of an unfavorable personal attitude toward [Simon]." (See *Taylor v. Hayes* (1974) 418 U.S. 488, 501–502.) None of the evidence cited by Simon indicates Judge Ross allowed any "personal feelings" to impact the proceedings or otherwise took action against Simon because of the allegations. (See *id.* at p. 503.) Accordingly, Simon has failed to prove Judge Ross was personally "embroiled in a running, bitter controversy" with him or overcome the "strong presumption that a judge is not biased or prejudiced." (*Rhoades v. Henry* (9th Cir. 2010) 598 F.3d 511, 519.)

Next, Simon contends Judge Ross was biased, prejudiced, and lacked impartiality during the proceedings based on the following allegations:

- Judge Ross "mocked and ridiculed" him when he made evidentiary errors during trial.

- Judge Ross imposed "arbitrary and misleading time limits" on Simon for presenting his cases.

- Judge Ross was "continuously short" with Simon, and "showed patience only to the Caucasian parties in his courtroom."

- Judge Ross failed to disclose his status as a landlord, and appeared to be relying on his experience and preemptively concluding Simon's cameras were illegal.

- Judge Ross ignored Simon's request for accommodations under California Rules of Court, rule 1.100 while acquiescing in " 'Caucasian defendants[']' " scheduling requests.

- Judge Ross received a gift from witness Deborah Rosenthal's corporation.

9

- Judge Ross received a campaign contribution from attorney Joshua Davis, counsel for Brabec and Goldsen.

- Judge Ross had improper ex parte communications.

- Judge Ross called the Sheriff on Simon for no legitimate or lawful reason, causing petitioner to fear for his life.

- Judge Ross's "procedural errors" in handling Simon's statement of disqualification "is proof positive of prejudice."

Simon has not supported his allegations so as to show a due process violation. Rulings made against Simon, such as denying a continuance or accommodation, are not evidence of bias or impartiality. (*Brown v. American Bicycle Group, LLC* (2014) 224 Cal.App.4th 665, 674 ["The trial judge's adverse legal rulings and denial of a request for a continuance do not reflect personal bias."].) Nor are allegations based on speculation or "belief" sufficient to support judicial disqualification. (See *N. Beverly Park Homeowners Ass'n v. Bisno* (2007) 147 Cal.App.4th 762, 778.)

To the extent Simon alleges the court made inappropriate comments during trial, a review of the record does not support Simon's claim. For example, Judge Ross's comment, "I think you are a member of the bar, are you not?" was made in the context of the court determining how much explanation it needed to provide regarding how to procedurally offer exhibits into evidence. When Simon responded in the affirmative, the court then stated, "Okay. So, you know what I'm talking about. If you want to admit an exhibit into evidence, you have to lay a foundation, give a copy to opposing counsel, and then we will admit it in evidence and I'll consider it." Likewise, Judge Ross's comment about the cameras was an attempt to clarify whether the witness said "legally" or "illegally" because he "didn't hear." The other statements identified by Simon are likewise reasonable or insufficient to demonstrate bias when considered in the context in which they arose.

10

Next, Simon's allegations that Judge Ross "called the Sheriff" on Simon or engaged in ex parte communications are conclusory at best as they lack context and/or factual support. Simon provides no context for either event or evidence that (1) ex parte communication occurred, or (2) the presence of a bailiff in the courtroom was targeted at Simon and was done " 'for no legitimate or lawful reason.' " Nor does Simon explain how these events demonstrate that Judge Ross was not impartial or otherwise support disqualification. An appellate court "need not consider . . . a perfunctory assertion [in a brief] unaccompanied by supporting argument." (*People v. Smith* (2003) 30 Cal.4th 581, 616, fn. 8.)

Similarly, Simon mentions campaign contributions without discussing whether the manner of the gifts or the amounts at issue would give rise to any presumption of bias or due process violation. Such assertions without analysis are deemed waived. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 [appellant's burden "requires more than a mere assertion that the judgment is wrong. . . . When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived."].)

Accordingly, Simon has failed to demonstrate Judge Ross was biased or lacked impartiality such that Simon was denied his due process rights.

## B. Other Challenges to the CHRO Trials

Apart from his claims against Judge Ross, Simon challenges two aspects of the CHRO trials that he contends violated his due process rights: (1) the CHRO trials were improperly reassigned from Department 505 to Department 502; and (2) the court failed to properly address his request for accommodations under California Rules of Court, rule 1.100.

11

### 1.  Reassignment to Department 502

Simon contends Judge Ross and Department 502 "lacked subject matter jurisdiction" over the CHRO trials because the local rules required the CHRO requests to be heard by the CHRO division.

"Government Code section 69508, subdivision (a) provides: 'The judges of each superior court having three or more judges, shall choose from their own number a presiding judge who serves as such at their pleasure.  Subject to the rules of the Judicial Council, the presiding judge shall distribute the business of the court among the judges, and prescribe the order of business.' " (*Alvarez v. Superior Court* (2010) 183 Cal.App.4th 969, 977–978 (*Alvarez*).) "The presiding judge's full authority over judicial assignments is spelled out in [California Rules of Court,] rule 10.603.  Rule 10.603(c)(1) confirms the presiding judge 'has ultimate authority to make judicial assignments.'  Rule 10.603(b)(1)(A) and (B) authorizes the presiding judge to '[a]ssign judges to departments,' 'designate supervising judges for divisions,' and '[a]pportion the business of the court, *including assigning and reassigning cases to departments*.'  Rule 10.603(c)(1)(D) directs the presiding judge to '*[r]eassign cases between departments as convenience or necessity requires*.' " (*Alvarez*, *supra*, 183 Cal.App.4th at p. 978, italics added.)

Here, the judge assigned to Department 505, who generally hears CHRO matters, recused herself.  Accordingly, the matters were reassigned for the CHRO hearings to Department 502.  This reassignment was well within the powers of the court.  "The assignment procedure is an allocation 'of the "business" of the court among judges of the court' over which the presiding judge has 'wholly discretionary' authority." (*Alvarez*, *supra*, 183 Cal.App.4th at p. 980.)

The authorities on which Simon relies do not hold otherwise. Witkin's California Procedure, which Simon cites repeatedly, discusses when "a distinct subject matter" is given to a special department or court "by statute"—i.e., probate and juvenile courts. (See Witkin, Cal. Proc. (6th ed.) §§ 278, 281.) Apart from these unique statutorily created courts, Witkin emphasizes that "[t]he creation of ordinary departments for the convenient disposition of classes of cases does not, on any theory, involve a distribution of subject matter jurisdiction[, and] all these judges have concurrent jurisdiction over civil actions and special proceedings." (Witkin, Cal. Proc. (6th ed.) § 281.) "[T]he authorized and procedurally sufficient transfer or reassignment of a cause that has been set for trial or hearing, to another department, is not a transfer of jurisdiction but merely a convenient means of securing a speedy determination." (*Ibid.*)

Department 502 did not lack jurisdiction to hear the CHRO matters, and these trials were properly assigned to Judge Ross after the judge in Department 505 recused herself.

## 2. Notice of Reassignment to Department 502

Next, Simon contends he was not provided proper notice of the reassignment from Department 505 to Department 502.

" 'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [Citations.] The notice must be of such nature as reasonably to convey the required information, [citation], and it must afford a reasonable time for those interested to make their appearance [citations]. But if with due regard for the practicalities and peculiarities of the case these conditions are

13

reasonably met, the constitutional requirements are satisfied. . . . [¶] . . . The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . . .' " (*Rasooly v. City of Oakley* (2018) 29 Cal.App.5th 348, 356–357.)

Simon has not shown his due process rights were violated. Although there is no written notice in the record, courts may infer actual notice from the facts of a case. (*In re Phillip F.* (2000) 78 Cal.App.4th 250, 259.) These matters were two of three filed by Simon that were simultaneously transferred to Judge Ross for trial. The dockets reflect this transfer from Department 505 to Department 502. Moreover, the day prior to the trial Simon filed a supplemental brief and declaration in support of his CHRO request, which identified the department as "502" and the judge as "The Honorable Jeffrey Ross." Simon also acknowledged that Department 505 orally informed him these cases—*Simon v. Brabec* and *Simon v. Goldsen*— had been transferred to Department 502 for trial. The record further reflects that Judge Ross informed the parties all three cases had been sent to him for trial. Because the record indicates the court provided Simon with actual notice of the April 4, 2023 hearing in time to appear, there was no due process violation. (See *In re Stephanie M.* (1994) 7 Cal.4th 295, 316 [no due process violation where party in question had both actual notice and an opportunity to be heard].)

Moreover, even if the court failed to give proper notice, any such error was harmless. (See *In re Iris R.* (2005) 131 Cal.App.4th 337, 343 ["due process error [does not] per se warrant a reversal, but rather is subject to a harmless error analysis"].) Simon appeared at the trials. After each matter was called, Simon proceeded with presenting his argument and testifying on

14

his own behalf.  He had the opportunity to call witnesses and offer evidence. At no point did he claim to be unprepared or otherwise surprised that trial was commencing in Department 502 before Judge Ross.

### 3. Request for Accommodation

Finally, Simon contends he made verbal and written requests for accommodation, but Judge Ross ignored his requests and "failed to provide [Simon] with the process due under" California Rules of Court, rule 1.100.

The purpose of California Rules of Court, rule 1.100 is "[t]o ensure access to the courts for persons with disabilities."  (Cal. Rules of Court, rule 1.100(b).)  A request for accommodation "must be made . . . no fewer than 5 court days before the requested implementation date."  (Cal. Rules of Court, rule 1.100(c)(3).)  Such request may be oral or in writing, and "must include a description of the accommodation sought, along with a statement of the medical condition that necessitates the accommodation."  (Cal. Rules of Court, rule 1.100(c)(2).)

Here, nothing in the record indicates Simon made a request for accommodation as a "person with disabilities" pursuant to this rule.  In the middle of the *Brabec* CHRO trial, Simon and the court engaged in the following exchange:

Simon: "Your Honor, could we go off the record--"

Court: "No. I think we need to continue with your testimony. These three cases have to conclude by noon today. . . ."

Simon: "Can I go off the record and approach with you and counsel?"

Court: "Excuse me. No. We're on the record. This is your trial. Please proceed with your testimony."

Simon: "Your Honor, I would like to disclose an issue with you and counsel."

Court: "Please do it on the record. . . . We want a complete record."

15

Simon: "It is a confidential medical issue, and I don't want to disclose it on the record or in public. . . ."

Court: "If there's anything you want me to consider, it has to be on the record. I can't take -- have the communications off the record about evidence in the case. We need to have a complete record."

Simon: "It's not about evidence."

Court: "Are you asking for a continuance?"

Simon: "No, not at this time."

Court: "Okay. Then please proceed with your testimony."

The record indicates that Simon never requested a disability accommodation or indicated he was seeking a disability accommodation. Likewise, in the subsequent CHRO hearing in *Simon v. Goldsen*, Simon only informed the court he would be "filing a notice of continuance" later that afternoon "[o]n the basis that I have a medical appointment." He did not state he was seeking a disability accommodation or indicate in any manner that his requested continuance was necessary to accommodate a disability. And the subsequent filings by Simon were requests for a continuance—form CH-115—and not a disability accommodation requests—form MC-410. Accordingly, the processes set forth in California Rules of Court, rule 1.100 were never triggered.[7]

Moreover, even if Simon's vague reference to a medical issue could qualify as an official disability accommodation request, he failed to make the request five days prior to the implementation date—i.e., the date of trial—as required by subdivision (c)(3). (See Cal. Rules of Court, rule 1.110, subd.

---

[7] Simon also references an email he sent to the presiding judge. However, to the extent the email asserts Simon requested Judge Ross provide medical accommodation, the record demonstrates otherwise.

16

(c)(3).) Simon does not assert any argument for why this time limit should be excused. Accordingly, Simon has failed to demonstrate any error.

## II. Judge Ross Was Entitled to Proceed With the CHRO Trials and Post-Trial Proceedings After Simon Filed His Disqualification Motion

Simon incorrectly asserts the court was unable to rule on his CHRO requests, deny his motions for new trial, or grant Brabec's and Goldsen's requests for attorney's fees after Simon filed his statements of disqualification. Code of Civil Procedure section 170.4, subdivision (c)(1) provides, "If a statement of disqualification is filed after a trial or hearing has commenced . . . by the swearing of the first witness . . . , the judge whose impartiality has been questioned may order the trial or hearing to continue, notwithstanding the filing of the statement of disqualification." Here, Simon did not file his motions for disqualification for cause until April 13, 2023 and May 19, 2023—after both CHRO trials had been completed. Accordingly, Judge Ross was entitled to rule on the CHROs and determine post-trial motions despite Simon's statements of disqualification.

## III. Award of Attorney's Fees and Costs

Simon challenges the court's award of attorney's fees to Brabec and Goldsen. He contends the awards are excessive, do not correspond to Brabec's and Goldsen's responses to the CHRO requests, and are unreasonable.

### A. Relevant Background

In May 2023, following the CHRO trials, Brabec and Goldsen filed motions for attorney's fees and costs. Both asserted they were entitled to fees as prevailing parties.

Brabec argued his counsel's rates were comparable to those charged by other attorneys performing similar work, and the number of hours billed was

17

reasonable. Specifically, he noted the CHRO was "contentious and complicated," due to the allegations of racism and discrimination, the various HOA issues, and a separate civil lawsuit filed by Simon raising may of the same issues, which required coordination with other counsel. He further noted that the case involved multiple continuances, which required additional preparation for new hearing dates. He sought fees and costs in the amount of $46,570.64.

Likewise, Goldsen asserted her counsel's rate and number of hours billed were reasonable. She noted the same complexities as set forth in Brabec's motion in support of her fee request. She sought fees and costs in the amount of $8,638.40.

Simon opposed both motions. In connection with Brabec's motion, Simon argued fees are discretionary and a fee award would "have a chilling effect on plaintiffs who file legitimate CHRO cases." Simon asserts his factual allegations were not in dispute but rather how such facts should be interpreted, and Simon reasonably interpreted Brabec's conduct to be harassing. Simon further argued Brabec's counsel's fees are "unreasonably inflated." He noted (1) Brabec's counsel claimed to be ready to try the matter in June 2022, but then proceeded to charge "another $25,026.65," between that date and the eventual hearing date in April 2023, and (2) Brabec's counsel did not distinguish between his work on *Simon v. Brabec* as compared to those incurred in *Simon v. Whitney Goldsen* or *Simon v. Nancy Goldsen*. Simon also disputed the requested costs, both as untimely and unreasonable.

Simon raised the same objections to Goldsen's motion as asserted in opposition to Brabec's motion. He also claimed the fee request was untimely.

18

The court granted Brabec's and Goldsen's fee requests. In connection with both requests, the court first concluded the billing rate of $325 per hour is "reasonable in the context of fees charged by Bay Area attorneys" and the fact that "the litigation . . . intertwined civil harassment law, property issues[,] and homeowners' association matters." The court then reviewed the billing statements submitted by counsel. In connection with Brabec's motion, the court struck certain fees related with counsel's "review" of "HOA history" and related litigations and disallowed billings for an associate attorney "as this matter did not require the services of two attorneys." After removing these and other unspecified items, the court awarded $21,505 in fees. The court found all of the fees sought by Goldsen's counsel reasonable, and awarded $7,507.50 in fees. The court denied both Brabec's and Goldsen's request for costs, concluding they "did not file a Memorandum of Costs . . . and therefore the right to recover costs is waived."

## B. Fee Award

Code of Civil Procedure section 527.6, subdivision (s), authorizes courts to award "court costs and attorney's fees" to the prevailing party. The statute does not limit the recovery of attorney's fees "to those instances where a party's conduct was frivolous or in bad faith." (*Krug v. Maschmeier* (2009) 172 Cal.App.4th 796, 803.) " ' " 'On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. . . .' " ' [Citation.] '[T]he trial court has broad authority to determine the amount of a reasonable fee. . . . As we have explained: "The 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong' "—meaning

19

that it abused its discretion.' " (*People ex rel. Becerra v. Shine* (2020) 46 Cal.App.5th 288, 293.)

Simon first contends the fee award was "to punish [Simon] . . . due to the multiple continuances," but those delays "were not the fault of [Simon]."[8] However, nothing in the record indicates that fees were sought or awarded to penalize Simon. And Simon cites no authority to support his claim that fees are excessive when awarded in cases with continuances. While Simon asserts certain continuances were based on Brabec's requests and should not justify additional fees, that merely raises a question of whether the court should have exercised its discretion to exclude those amounts.

More specifically, Simon contests the invoices as excessive because: (1) the invoices contained entries involving "re-reviews" of material, and (2) the invoices failed to separate costs in this matter from those related to *Simon v. Whitney Goldsen* and *Simon v. Nancy Goldsen*. However, Simon does not identify any line items that indicate fees for *Simon v. Whitney Goldsen* and *Simon v. Nancy Goldsen* were included in the disputed invoices. Likewise, Simon does not address whether these charges were part of the fees struck by the court. Based on this court's review of the invoices, it appears the fees disputed by Simon regarding "re-reviews" total approximately $5,800. But the court struck over $21,000 in requested fees.

Here, the record indicates the court appropriately examined the billing statements in detail and did, in fact, exercise its discretion to exclude approximately half of the requested fees. This reduction presumably includes any excessive duplication of work, as well as other items the court found

---

[8] Simon also argues Brabec never sought "to modify, terminate, or dismiss the TRO or CHRO request" or request a more expedited hearing. This argument is irrelevant to the question of whether the trial court abused its discretion in awarding fees.

excessive or unnecessary. In light of the court's significant reduction in the requested fees, Simon fails to identify with any detail which additional fees he contends should have been excluded.

Next, Simon argues Brabec and Goldsen were awarded "hidden costs" that were listed on their counsel's invoices as expenses. However, the record demonstrates that the court recognized the invoices contained both fees and costs. In awarding attorney's fees, the court only considered the fee section of the invoices—which this court confirmed by reviewing the fee totals listed on each invoice. The "expense" section of the invoice—i.e., the costs—were deemed waived and not awarded, as discussed above.[9]

Finally, Simon appears to suggest Brabec's and Goldsen's failure to list a specific dollar amount on their CHRO response precludes any award of attorney fees and costs. However, Simon fails to cite any authority for this position. Nor are we aware of any authority suggesting the right to seek attorney's fees is waived by a party's failure to delineate all such fees in his or her response to a CHRO request.

Based on the foregoing, we cannot conclude the trial court abused its discretion in ordering the fee awards. While the "re-review" entries suggest duplication, the record indicates the court conducted a detailed review of the invoices and struck over $21,000 in fees—an amount that easily encompass those entries as well as others. Accordingly, we decline to find error.

---

[9] Simon seems to conflate the *cost* of items, such as any telephone call charge, with the *attorney fees* for the time incurred in conducting those calls. Here, the court properly excluded the cost of the telephone call, but allowed recovery of some portion of counsel's time.

## C. Timeliness and Service of Fee Motions

Simon contends Brabec's and Goldsen's motions were untimely because they were not filed sixteen days prior to the hearing date. He contends there is "no exemption or exception to the timeliness requirements."

To the contrary, " '[a] trial court has broad discretion to accept or reject late-filed papers.' " (*Jack v. Ring LLC* (2023) 91 Cal.App.5th 1186, 1210.) " 'The principal purpose of the requirement to file and serve a notice of motion a specified number of days before the hearing ([Code Civ. Proc.,] § 1005, subd. (b)) is to provide the opposing party adequate time to prepare an opposition. That purpose is served if the party appears at the hearing, opposes the motion on the merits, and was not prejudiced in preparing an opposition by the untimely notice.' " (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 828–829.)

Brabec and Goldsen assert they set the June 8, 2023 hearing date for their motions at the instruction of the court. The record indicates Simon filed detailed oppositions. He does not contend he was impaired in his ability to do so or to appear and argue the motions. Accordingly, the trial court had discretion to accept the filings, and Simon has not demonstrated any resulting prejudice.

Simon also contends the motions were improperly served. He did not raise this issue below, and thus it is waived. (*Arambula v. Union Carbide Corp.* (2005) 128 Cal.App.4th 333, 342 ["A party who appears at the hearing on a motion and contests the motion on the merits without objecting to a defect or irregularity in the notice of motion ordinarily is deemed to waive the defect or irregularity"].)

## IV. Denial of Motions for New Trial

Simon contends he timely filed a motion for new trial and lists the thirteen bases on which his motion was based. He asserts his motion included grounds such as "[i]rregularity in the proceedings," "[a]ccident or surprise," "[n]ewly discovered evidence," and "[e]xcessive or inadequate damages." Simon's subsequent argument is contained in one sentence: "But the structure errors were a miscarriage of justice and requires reversal and a new trial."

A new trial motion may be granted based on irregularity in the court proceedings, accident or surprise, newly discovered evidence, insufficient evidence to justify the verdict or other decision, or for any error in law, which occurred at the trial and to which the party making the new trial motion objected. (Code Civ. Proc., § 657, subds. 1, 3, 4, 6 & 7.) While Simon listed all these as grounds for his new trial motion, he failed to explain *why* they support his claim for new trial and *why* the trial court erred in denying his motion. (*Howard v. American National Fire Ins. Co.* (2010) 187 Cal.App.4th 498, 523 ["Conclusory assertions of error are ineffective in raising issues on appeal."].) Having failed to elaborate or support his position, Simon's argument is deemed forfeited.

### DISPOSITION

The judgments are affirmed. Respondents may recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

_____
Petrou, J.

WE CONCUR:


_____
Tucher, P.J.


_____
Rodríguez, J.


A168223/*Simon v. Brabec*
A168226/*Simon v. Goldsen*

24